**No. 14-12563**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

IN RE:  FELIX SARDINA AND YANEISY SARDINA

BANK OF AMERICA, N.A.,

*Appellant*,

*v.*

FELIX SARDINA AND YANEISY SARDINA,

*Appellees.*

On Appeal from the United States District Court for the Southern District of Florida (Case No. 14-21153)

**BRIEF FOR APPELLANT BANK OF AMERICA, N.A.**

CRAIG GOLDBLATT
DANIELLE SPINELLI
ISLEY MARKMAN GOSTIN
WILMER CUTLER PICKERING
    HALE & DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C.  20006
(202) 663-6000

LAUDY LUNA PEREZ
LIEBLER, GONZALEZ &
PORTUONDO, P.A.
44 WEST FLAGLER ST., SUITE 2500
MIAMI, FL 33130
(305) 379-0400

*Counsel for Bank of America, N.A.*

July 8, 2014

*Bank of America, N.A. v. Sardina, No. 14-12563*

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (page 1 of 2)**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, Appellant Bank of America, N.A. hereby states that the following individuals and entities may have an interest in the outcome of this case:

1.    Bank of America Corporation (ticker symbol: BAC)

2.    Bank of America, N.A. (Creditor-Appellant)

3.    Dillworth, Drew M. (Chapter 7 Trustee)

4.    Goldblatt, Craig (Counsel to Creditor-Appellant)

5.    Gostin, Isley M. (Counsel to Creditor-Appellant)

6.    Isicoff, Laurel M. (Bankruptcy Judge)

7.    Kingcade & Garcia, PA (Counsel to Debtor-Appellee)

8.    Kingcade, Timothy S. (Counsel to Debtor-Appellee)

9.    Liebler Gonzalez & Portuondo, PA (Counsel to Creditor-Appellant)

10.    Moore, K. Michael (District Judge)

11.    Perez, Laudy L. (Counsel to Creditor-Appellant)

12.    Sardina, Felix R. (Debtor-Appellee)

13.    Sardina, Yaneisy (Debtor-Appellee)

14.    Spinelli, Danielle (Counsel to Creditor-Appellant)

15.    Wilmer Cutler Pickering Hale & Dorr LLP (Counsel to Creditor-Appellant)

*Bank of America, N.A. v. Sardina, No. 14-12563*

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (page 2 of 2)**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, Appellant Bank of America, N.A. represents that Bank of America, N.A. is a wholly-owned subsidiary of Bank of America Corporation, a publicly-traded corporation (ticker symbol: BAC).  Bank of America Corporation has no parent corporation, and no publicly held corporation holds 10% or more of its stock.

/s/ Craig Goldblatt

CRAIG GOLDBLATT
WILMER CUTLER PICKERING HALE & DORR LLP
*Counsel for Appellant Bank of America, N.A.*

## STATEMENT REGARDING ORAL ARGUMENT

The question presented in this case is controlled by *Folendore v. Small Business Administration*, 862 F.2d 1537 (11th Cir. 1989), which this Court reaffirmed in *McNeal v. GMAC Mortgage, LLC*, 735 F.3d 1263 (11th Cir. 2012). Accordingly, while Bank of America would be pleased to appear for oral argument if the panel thinks it helpful, it believes that oral argument before the panel is unnecessary.  Bank of America reserves its right to seek *en banc* review and ask the *en banc* Court to overrule *Folendore* and *McNeal*, since those decisions are inconsistent with *Dewsnup v. Timm*, 502 U.S. 410 (1992), and conflict with rulings from the Fourth, Sixth, and Seventh Circuits.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........................................................................i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF AUTHORITIES ..................................................................................vi

STATEMENT OF JURISDICTION.......................................................................1

STATEMENT OF THE ISSUE...............................................................................1

INTRODUCTION ....................................................................................................1

STATEMENT OF FACTS AND OF THE CASE ..................................................4

      A.     Legal Background ................................................................4

      B.     Factual And Procedural Background ...................................11

STANDARD OF REVIEW ....................................................................................12

SUMMARY OF ARGUMENT ..............................................................................13

ARGUMENT ...........................................................................................................14

I.     UNDER *FOLENDORE*, THE SARDINAS MAY STRIP OFF BANK OF AMERICA'S WHOLLY UNDERWATER JUNIOR LIEN ON THEIR HOUSE ........................................................................................................14

II.    *FOLENDORE* WAS WRONGLY DECIDED, AND BANK OF AMERICA RESERVES THE RIGHT TO ASK THE *EN BANC* COURT TO OVERRULE IT ..............................................................................................15

      A.     *Folendore* Cannot Be Reconciled With *Dewsnup* .............................15

      B.     *Folendore* Conflicts With Decisions From The Fourth, Sixth, And Seventh Circuits ...............................................................17

C.    *Folendore* Has Adversely Affected The Treatment Of Home Mortgages In Chapter 7 Bankruptcies Within This Circuit ................................................................................................21

CONCLUSION .......................................................................................................25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Dewsnup v. Timm*, 502 U.S. 410 (1992) ............................................................*passim*

*Folendore v. Small Business Administration*, 862 F.2d 1537 (11th Cir. 1989) ......................................................................................*passim*

*In re Armstrong*, 2011 WL 768080 (M.D. Fla. Feb. 28, 2011) .........................3, 10

*In re Bertan*, 2013 WL 216231 (Bankr. S.D. Fla. Jan. 18, 2013) ..........................21

*In re Bowman*, 304 B.R. 166 (Bankr. M.D. Pa. 2003) ...........................................20

*In re Campbell*, 498 B.R. 370 (Bankr. N.D. Ga. 2013) ..........................................22

*In re Cater*, 240 B.R. 420 (M.D. Ala. 1999) .......................................................3, 11

*In re Cook*, 449 B.R. 664 (D.N.J. 2011) ................................................................20

*In re Farha*, 246 B.R. 547 (Bankr. E.D. Mich. 2000) ...........................................21

*In re Fitzmaurice*, 248 B.R. 356 (Bankr. W.D. Mo. 2000) ...................................20

*In re Hoffman*, 433 B.R. 437 (Bankr. M.D. Fla. 2010) ......................................3, 10

*In re Laskin*, 222 B.R. 872 (B.A.P. 9th Cir. 1998) ..........................................18, 20

*In re Malone*, 489 B.R. 275 (Bankr. N.D. Ga. 2013) .............................................21

*In re Richins*, 469 B.R. 375 (Bankr. D. Utah 2012) ...............................................20

*In re River East Plaza, LLC*, 669 F.3d 826 (7th Cir. 2012) ...................................25

*In re Smoot*, 465 B.R. 730 (Bankr. E.D.N.Y. 2011) ..............................................21

*In re Swafford*, 160 B.R. 246 (Bankr. N.D. Ga. 1993) ......................................3, 10

*In re Talbert*, 344 F.3d 555 (6th Cir. 2003) ......................................4, 10, 18, 19, 21

*In re TOUSA, Inc.*, 680 F.3d 1298 (11th Cir. 2012) .........................................12, 13

*In re Williams*, 488 B.R. 492 (Bankr. M.D. Ga. 2013) ..........................................22

*In re Windham*, 136 B.R. 878 (Bankr. M.D. Fla. 1992) ......................................3, 11

*In re Yi*, 219 B.R. 394 (E.D. Va. 1998) ................................................................21

*In re Zempel*, 244 B.R. 625 (Bankr. W.D. Ky. 1999)............................................21

*Johnson v. Home State Bank*, 501 U.S. 78 (1991)....................................................6

*Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007)........................................4

*McNeal v. GMAC Mortgage, LLC*, 735 F.3d 1263 (11th Cir. 2012) ..............*passim*

*Palomar v. First American Bank*, 722 F.3d 992 (7th Cir. 2013)............4, 10, 19, 20

*Ryan v. Homecomings Financial Network*, 253 F.3d 778 (4th Cir. 2001) .......................................................................................3, 10, 17, 18, 21

*Wachovia Mortgage v. Smoot*, 478 B.R. 555 (E.D.N.Y. 2012)........................20, 21

## STATUTES

11 U.S.C.
    § 506(a) ...................................................................................................6
    § 506(d) ...........................................................................................*passim*
    § 524.......................................................................................................5
    § 524(a)(1) ..............................................................................................5
    § 524(a)(2) ..............................................................................................5
    § 554(a) ..................................................................................................5
    § 554(b) ..................................................................................................5
    § 704.......................................................................................................5
    § 727.......................................................................................................5

28 U.S.C.
    § 157(a) ..................................................................................................1
    § 158(a)(1) ..............................................................................................1
    § 158(d)(1) ..............................................................................................1
    § 1291.....................................................................................................1
    § 1334.....................................................................................................1

## LEGISLATIVE MATERIALS

H.R. Rep. No. 95-595 (1977).....................................................................................9

## OTHER AUTHORITIES

Bruce, Ashley Dillman & Ashley Prager Popowitz, *Get Busy
Stripping Until The Eleventh Circuit Says Otherwise*, 2 S.D.
Fla. Bankr. Bar Ass'n Journal 9 (2013)..........................................................22

Mann, Ronald J., *Explaining the Pattern of Secured Credit*, 110 Harv.
L. Rev. 625 (1997)............................................................................................24

## STATEMENT OF JURISDICTION

The district court had original jurisdiction of this chapter 7 case under 28 U.S.C. § 1334.  Pursuant to 28 U.S.C. § 157(a), the district court referred the case to the bankruptcy court.  The bankruptcy court entered final judgment on February 18, 2014.  Bank of America filed a timely notice of appeal to the district court on February 24, 2014.  The district court exercised its appellate jurisdiction under 28 U.S.C. § 158(a)(1) and entered its final order on May 28, 2014.  Bank of America filed a timely notice of appeal to this Court on June 10, 2014.  This Court has jurisdiction under 28 U.S.C. §§ 158(d)(1) and 1291.

## STATEMENT OF THE ISSUE

Whether Section 506(d) of the Bankruptcy Code—which provides in relevant part that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void"—allows a chapter 7 debtor to "strip off" a valid junior mortgage lien when the debt secured by the senior lien exceeds the value of the collateral.

## INTRODUCTION

Appellees Felix Sardina and Yaneisy Sardina obtained a second home-mortgage loan from Appellant Bank of America, N.A., and, in exchange, they granted Bank of America a second lien on their house.  There has never been any dispute that Bank of America's lien is valid and enforceable against the Sardinas

under state law.  The Sardinas have now filed for chapter 7 bankruptcy, and Bank of America's second lien is wholly "underwater" because the debt secured by the first lien exceeds the current value of the house.  The question presented here is whether the Sardinas may void, or "strip off," Bank of America's valid second lien merely because it is wholly underwater.  Under this Court's prior panel decisions, Bank of America's lien may be stripped off.  But those decisions are inconsistent with Supreme Court precedent and conflict with rulings of three other courts of appeals.  While the panel is bound by this Court's prior panel precedent, Bank of America reserves its right to ask the *en banc* Court to reconsider the issue.

Section 506(d) of the Bankruptcy Code provides, subject to exceptions not relevant here, that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void."  11 U.S.C. § 506(d).  More than two decades ago, this Court held that Section 506(d) authorizes a chapter 7 debtor to strip off a wholly underwater lien, reasoning that the "plain language" of the statute rendered a lien void to the extent that it exceeded the value of the collateral.  *Folendore v. Small Bus. Admin.*, 862 F.2d 1537, 1539 (11th Cir. 1989).

Soon after, however, the Supreme Court rejected the reasoning of *Folendore*.  In *Dewsnup v. Timm*, 502 U.S. 410 (1992), the Court held that Section 506(d) voids liens only when they do not secure a valid, "allowed" claim—and not merely because they are underwater.  Explaining that Section 506(d) must be read

in light of "the pre-Code rule that liens pass through bankruptcy unaffected," *Dewsnup* held that Section 506(d) does not allow a chapter 7 debtor to "strip down" a partially underwater lien by reducing the value of the lien to the value of the collateral. *See id.* at 417-420. And the Court observed that the contrary interpretation of Section 506(d)—that is, the interpretation endorsed by this Court in *Folendore*—was "not plausible" and "contrary to basic bankruptcy principles." *Id.* at 420.

*Folendore*'s interpretation of Section 506(d) accordingly did not survive *Dewsnup*. Indeed, until recently, courts in this circuit agreed that *Folendore* was no longer good law and that a chapter 7 debtor could not strip off a wholly underwater mortgage lien. As one court put it, "*Dewsnup* effectively overruled *Folendore*." *In re Swafford*, 160 B.R. 246, 249 (Bankr. N.D. Ga. 1993); *see also In re Cater*, 240 B.R. 420, 423 (M.D. Ala. 1999); *In re Armstrong*, 2011 WL 768080, at *3 (M.D. Fla. Feb. 28, 2011); *In re Hoffman*, 433 B.R. 437, 440 (Bankr. M.D. Fla. 2010); *In re Windham*, 136 B.R. 878, 882 n.6 (Bankr. M.D. Fla. 1992). Likewise, every court outside this circuit to have addressed the issue—including the Fourth, Sixth, and Seventh Circuits—has concluded that, under *Dewsnup*'s reasoning, Section 506(d) permits neither strip-downs nor strip-offs in a chapter 7 case. *See, e.g.*, *Ryan v. Homecomings Fin. Network*, 253 F.3d 778 (4th Cir. 2001);

*In re Talbert*, 344 F.3d 555 (6th Cir. 2003); *Palomar v. First Am. Bank*, 722 F.3d 992 (7th Cir. 2013).

In 2012, however, a panel of this Court ruled that *Folendore* remains binding, notwithstanding *Dewsnup*. *See McNeal v. GMAC Mortgage, LLC*, 735 F.3d 1263 (11th Cir. 2012). While *McNeal* noted that "the Supreme Court's reasoning in *Dewsnup* seems to reject the … analysis that we used in *Folendore*," it held that *Folendore* is still the "controlling precedent in the Eleventh Circuit" under this Court's "prior panel precedent" rule because *Dewsnup* addressed a strip-down, whereas *Folendore* involved a strip-off. *Id.* at 1265.

*Folendore*, together with *McNeal*, controls this case. This panel thus has no choice but to hold—as the bankruptcy and district courts did—that Bank of America's junior lien may be stripped off. But *Folendore* is simply no longer good law after *Dewsnup*. Accordingly, Bank of America reserves its right to ask the *en banc* Court to review this case and overrule *McNeal* and *Folendore*.

## STATEMENT OF FACTS AND OF THE CASE

### A.    Legal Background

1.    Chapter 7 of the Bankruptcy Code permits eligible individual debtors to obtain "a discharge of prepetition debts following the liquidation of the debtor's [non-exempt] assets by a bankruptcy trustee, who then distributes the proceeds to creditors." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007); *see also*

11 U.S.C. §§ 524, 704, 727.  Importantly, however, a chapter 7 proceeding discharges only the debtor's *personal* liability on his debts; it does not typically void a secured creditor's right to foreclose on the property securing the creditor's claim.  *See id.* § 524(a)(1), (2) (providing that a discharge voids certain judgments and enjoins certain collection proceedings regarding debts that are the "personal liability of the debtor"); *see also, e.g.*, *Dewsnup*, 502 U.S. at 417 ("[T]he creditor's lien stays with the real property until the foreclosure.  That is what was bargained for by the mortgagor and the mortgagee.").

Many chapter 7 debtors have no equity in their houses because the houses are worth less than the amount outstanding on the mortgage loans they secure— that is, the loans are undersecured or "underwater."  In such cases, rather than selling the house, the chapter 7 trustee may "abandon" it to the debtor as being "of inconsequential benefit and value to the estate."  11 U.S.C. § 554(a), (b).  If the debtor is in default on the mortgage and lacks the means to cure the default, he or she may surrender the house to the mortgage-holder in satisfaction of its secured claim, and any deficiency claim the mortgage-holder may have against the debtor is discharged.  Alternatively, if the debtor is current on the mortgage, he or she may stay in the house and continue to pay the mortgage following the chapter 7 proceeding.  In that scenario, too, any personal liability the debtor may have under the terms of the mortgage loan is discharged.  In short, "the mortgage interest that

passes through a chapter 7 liquidation is enforceable only against the debtor's property" and "has the same properties as a nonrecourse loan." *Johnson v. Home State Bank*, 501 U.S. 78, 86 (1991).

This case presents the question whether, when a first mortgage on a chapter 7 debtor's house is undersecured, so that a second mortgage is completely "underwater," the debtor may not only discharge his or her personal liability for the second mortgage loan, but also "strip off" the lien itself, leaving the mortgage-holder without the right to foreclose on the property even if its value subsequently increases. The answer to that question turns on the construction of Section 506 of the Bankruptcy Code, which governs the treatment of undersecured claims.

Section 506(a) provides, as relevant here, that "[a]n allowed secured claim of a creditor secured by a lien on [estate] property … is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property … and is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim." 11 U.S.C. § 506(a). In essence, Section 506(a) bifurcates a creditor's undersecured claim into a "secured claim" for the present value of the collateral and an "unsecured claim" for the remainder. For example, a senior mortgage lender owed $150,000 on a loan secured by a $100,000 house would have a secured claim for $100,000 and an

unsecured claim for $50,000, while a junior lender owed $25,000 on a loan secured by the same house would have only an unsecured claim for $25,000.

Section 506(d), the key provision at issue in this case, provides—subject to exceptions not relevant here—that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void." *Id.* § 506(d).

Before the Supreme Court's decision in *Dewsnup*, some courts, including this one, had held that Section 506(d) permitted a debtor to strip a secured creditor's lien down to the value of the collateral securing the creditor's claim. *See Folendore v. Small Bus. Admin.*, 862 F.2d 1537 (11th Cir. 1989). In *Folendore*, the creditor held a junior mortgage on the debtors' property. The creditor's claim was conceded to be valid and had been allowed. *See id.* at 1538. But its lien was completely underwater because the property's value was less than the outstanding debt on the two senior mortgage loans. *See id.* This Court reasoned that because Section 506(a) treats the portion of a secured claim in excess of the value of the security as unsecured, the creditor had no "allowed secured claim" within the meaning of Section 506(d), and its lien could thus be stripped off. *See id.* at 1539.

2.    In 1992, however, the Supreme Court decided *Dewsnup*, which decisively rejected that construction of Section 506. In *Dewsnup*, the creditor had issued a pre-bankruptcy loan to the debtor secured by a lien on the debtor's real

property.  When the debtor filed for bankruptcy, the lien was partially underwater because the outstanding balance on the loan exceeded the then-current value of the property.  The debtor moved, pursuant to Section 506(d), to void the portion of the lien that was underwater, making the same statutory argument that this Court had accepted in *Folendore*.  That is, the debtor "t[ook] the position that §§ 506(a) and 506(d) are complementary and to be read together.  Because, under § 506(a), a claim is secured only to the extent of the judicially determined value of the real property on which the lien is fixed, a debtor can void a lien on the property pursuant to § 506(d) to the extent the claim is no longer secured and thus is not an 'allowed secured claim.'"  502 U.S. at 414.  In support of this position, the debtor expressly relied on *Folendore*, noting that this Court had "flatly rejected" the view that Section 506(d) does not authorize lien-stripping.  *See* Reply Brief for the Petitioner, *Dewsnup v. Timm*, 1991 WL 521264, at *13.

The Supreme Court rejected the debtor's reading of the statute—and, by extension, this Court's reading—and held that Section 506(d) does not permit a debtor to void a lien securing an allowed claim.  Adopting the statutory construction advocated by the United States, the Court reasoned that "the words 'allowed secured claim' in § 506(d) need not be read as an indivisible term of art defined by reference to § 506(a)."  *Dewsnup*, 502 U.S. at 415.  "Rather, the words should be read term-by-term to refer to any claim that is, first, allowed, and

second, secured." *Id.* Where a claim "has been 'allowed' … and is secured by a lien with recourse to the underlying collateral, it does not come within the scope of § 506(d)." *Id.* That construction, the Court explained, gives Section 506(d) "the simple and sensible function of voiding a lien whenever a claim secured by the lien itself has not been allowed," and "ensures that the Code's determination not to allow the underlying claim against the debtor personally is given full effect by preventing its assertion against the debtor's property." *Id.* at 415-416.

In reaching that conclusion, the Supreme Court emphasized the fundamental and longstanding principle that "liens pass through bankruptcy unaffected." *Dewsnup*, 502 U.S. at 417. As the Court explained, under well-established practice prior to the 1978 enactment of the Bankruptcy Code, "involuntary reduction of the amount of a creditor's lien" was not permitted "for any reason other than payment on the debt." *Id.* at 419. "Congress must have enacted [Section 506(d)] with a full understanding of this practice." *Id.* Indeed, Section 506(d)'s legislative history specified that the provision was intended to "permit[] liens to pass through the bankruptcy case unaffected." *Id.* (quoting H.R. Rep. No. 95-595, at 357 (1977)).

As the Supreme Court explained, the debtor's reading of the statute would have contradicted that basic principle. The "practical effect" of the debtor's approach would have been "to freeze the creditor's secured interest at the judicially determined valuation," depriving the creditor of "the benefit of any increase in the

value of the property by the time of the foreclosure sale," and giving the debtor a potential "windfall." *Dewsnup*, 502 U.S. at 417. But, the Court recognized, the basic bargain of a mortgage requires that "the creditor's lien stays with the real property until the foreclosure," and any appreciation in the property's value "rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors." *Id.* Read against that backdrop, Section 506 does not permit a debtor to strip a creditor's lien simply because it is undersecured in light of the current value of the collateral.

3.     *Dewsnup* addressed what in bankruptcy jargon is called a "strip down"—that is, the creditor's mortgage was only partially, not completely, underwater. Every court of appeals to address the issue, other than this Court, has nonetheless correctly concluded that *Dewsnup*'s reasoning is equally applicable to "strip offs"—cases in which a mortgage is completely underwater, typically because a senior lienholder is undersecured. *See, e.g.*, *Ryan v. Homecomings Fin. Network*, 253 F.3d 778 (4th Cir. 2001); *In re Talbert*, 344 F.3d 555 (6th Cir. 2003); *Palomar v. First Am. Bank*, 722 F.3d 992 (7th Cir. 2013). Indeed, prior to this Court's decision in *McNeal*, all the bankruptcy and district courts within this circuit had uniformly held that *Dewsnup* implicitly overruled *Folendore*'s reading of Section 506(d). *See In re Hoffman*, 433 B.R. 437, 440 (Bankr. M.D. Fla. 2010); *In re Swafford*, 160 B.R. 246, 249 (Bankr. N.D. Ga. 1993); *In re Armstrong*, 2011

WL 768080, at *3 (M.D. Fla. Feb. 28, 2011); *In re Cater*, 240 B.R. 420, 423 (M.D. Ala. 1999); *In re Windham*, 136 B.R. 878, 882 n.6 (Bankr. M.D. Fla. 1992).

In 2012, however, this Court ruled that *Folendore* remains good law, notwithstanding *Dewsnup*.  *See McNeal v. GMAC Mortgage, LLC*, 735 F.3d 1263 (11th Cir. 2012).  *McNeal* recognized that "[s]everal courts," including the Fourth and Sixth Circuits, had determined that *Dewsnup* precluded such a strip-off.  *Id.* at 1265.  It also acknowledged that *Dewsnup* "seems to reject the plain language analysis that we used in *Folendore*" and that "bankruptcy court decisions within our circuit … have treated *Folendore* as abrogated by *Dewsnup*."  *Id*.  *McNeal* nonetheless concluded that, in light of this Court's "prior panel precedent" rule— under which "a later panel may depart from an earlier panel's decision only when the intervening Supreme Court decision is 'clearly on point'"—"*Folendore*—not *Dewsnup*—controls in this case."  *Id*.  *McNeal* reasoned that *Dewsnup* was not "clearly on point" because it "disallowed only a 'strip down' of a partially secured mortgage lien and did not address a 'strip off' of a wholly unsecured lien."  *Id.*

## B.    Factual And Procedural Background

The debtors in this case, Felix Sardina and Yaneisy Sardina, filed a chapter 7 petition in the U.S. Bankruptcy Court for the Southern District of Florida on November 25, 2013.  The Sardinas have two mortgages on their house, and the outstanding balance on the first mortgage loan exceeds the house's current value.

They filed a motion to strip off Bank of America's junior lien under Section 506(d).

Bank of America filed a response to the motion acknowledging *McNeal*'s conclusion that *Folendore* remains binding precedent but reserving the Bank's right to seek appellate review of the bankruptcy court's decision.  Bankr. Dkt. 41 ¶ 10.  The bankruptcy court granted the debtors' motion and held that under *McNeal*, the debtors were permitted to strip off Bank of America's second lien. Bankr. Dkt. 43.  The bankruptcy court ordered that "[t]he lien securing Bank of America's claim on the Property is deemed void and shall be extinguished automatically, without further court order, upon entry of the Debtors' discharge in this Chapter 7 case."  *Id.* at 3.

Bank of America appealed to the district court, where—in light of *McNeal* and *Folendore*—it filed a motion for summary affirmance, again expressly reserving the Bank's right to seek further appellate review.  On May 28, 2014, the district court entered an order summarily affirming the bankruptcy court.  Dist. Ct. Dkt. 8.  This appeal followed.

## STANDARD OF REVIEW

This Court "review[s] the order of the bankruptcy court independently of the district court."  *In re TOUSA, Inc.*, 680 F.3d 1298, 1310 (11th Cir. 2012).  It

reviews "determinations of law made by either court *de novo*" and "the findings of fact of the bankruptcy court for clear error."  *Id.*

## SUMMARY OF ARGUMENT

This Court held in *McNeal v. GMAC Mortgage, LLC*, 735 F.3d 1263 (11th Cir. 2012), that under the "prior panel precedent" rule, panels of the Court remain bound by *Folendore v. Small Business Administration*, 862 F.2d 1537 (11th Cir. 1989), which held that Section 506(d) of the Bankruptcy Code allows a chapter 7 debtor to strip off a wholly underwater junior lien.  Because the panel here is bound by *McNeal* and *Folendore*, it must affirm the bankruptcy and district court's ruling that the Sardinas may strip off Bank of America's second lien.

But *Folendore* was wrongly decided.  The Supreme Court squarely rejected *Folendore*'s reading of Section 506(d) in *Dewsnup v. Timm*, 502 U.S. 410 (1992); its holding conflicts with that of every other court of appeals to address the question after *Dewsnup*; and this Court's reaffirmation of *Folendore* in *McNeal* has unnecessarily confused the chapter 7 bankruptcy process in this circuit.  Bank of America thus reserves the right to seek *en banc* review of this case and ask the *en banc* Court to overrule *McNeal* and *Folendore*.

# ARGUMENT

## I. UNDER *FOLENDORE*, THE SARDINAS MAY STRIP OFF BANK OF AMERICA'S WHOLLY UNDERWATER JUNIOR LIEN ON THEIR HOUSE

As discussed in detail above, *see supra* p. 7, in *Folendore v. Small Business Administration*, 862 F.2d 1537 (11th Cir. 1989), this Court held that Section 506(d) allows a chapter 7 debtor to strip off a wholly underwater junior mortgage lien. In *McNeal v. GMAC Mortgage, LLC*, 735 F.3d 1263, 1265 (11th Cir. 2012), this Court concluded that *Folendore* remains the "controlling precedent" in this circuit, despite the Supreme Court's intervening decision in *Dewsnup v. Timm*, 502 U.S. 410 (1992), which held that Section 506(d) does not authorize debtors to strip down partially underwater liens on their homes. *McNeal* acknowledged that *Dewsnup*'s reasoning "seem[ed] to reject" *Folendore*'s interpretation of Section 506(d) and that *Folendore*'s holding conflicts with the decisions of other courts of appeals. 735 F.3d at 1265. *McNeal* nonetheless held that, under the "prior panel precedent" rule, "*Folendore*—not *Dewsnup*—controls in this case." *Id.*

In light of *McNeal*, Bank of America acknowledges that *Folendore* governs this case. Because the panel is bound by *McNeal* and *Folendore*, it must affirm the lower courts' ruling that the Sardinas may strip off Bank of America's wholly underwater junior lien.

- 14 -

## II.    *FOLENDORE* WAS WRONGLY DECIDED, AND BANK OF AMERICA RESERVES THE RIGHT TO ASK THE *EN BANC* COURT TO OVERRULE IT

In light of *Dewsnup*, *Folendore* is wrongly decided and should be abandoned. Although, as *McNeal* held, this panel cannot overrule *Folendore*, Bank of America reserves its right to seek *en banc* review to challenge *Folendore*'s continued viability.

### A.    *Folendore* Cannot Be Reconciled With *Dewsnup*

*Dewsnup* squarely repudiated *Folendore*'s interpretation of Section 506(d). *Folendore* had reasoned that because Section 506(a) bifurcates undersecured claims into a secured claim for the value of the collateral and an unsecured claim for the remainder, a claim secured by a lien that is wholly underwater is not an "allowed *secured* claim" within the meaning of Section 506(d), and the lien may therefore be stripped off. *See* 862 F.2d at 1538-1539.

*Dewsnup* made clear, however, that *Folendore*'s reading of the phrase "allowed secured claim" was mistaken. As the Supreme Court explained in describing the argument made by the creditor and the United States—which the Court adopted, *see Dewsnup*, 502 U.S. at 417—"the words 'allowed secured claim' in § 506(d) need not be read as an indivisible term of art defined by reference to § 506(a)," as *Folendore* had done, but instead "should be read term-by-term to refer to any claim that is, first, allowed, and second, secured." *Id.* at 415. If a claim "has been 'allowed' … and is secured by a lien with recourse to the

underlying collateral, it does not come within the scope of § 506(d)." *Id.*  Read that way, Section 506(d) has "the simple and sensible function of voiding a lien whenever a claim secured by the lien itself has not been allowed."  *Id.* at 415-416.

*Folendore* therefore could not have survived *Dewsnup*.  Indeed, in *McNeal*, this Court acknowledged that *Dewsnup*'s reasoning "seem[ed] to reject" the "analysis that we used in *Folendore*."  735 F.3d at 1265.  *McNeal* opined, however, that "[b]ecause *Dewsnup* disallowed only a 'strip down' of a partially secured mortgage lien and did not address a 'strip off' of a wholly unsecured lien, it is not 'clearly on point' with the facts in *Folendore*," and therefore *Folendore* remained binding under this Court's prior panel precedent rule.  *Id.*

Under the reasoning of *Dewsnup*, however, the distinction drawn by *McNeal* makes no difference.  *Dewsnup* interpreted Section 506(d) to apply only "whenever a *claim* secured by the lien *itself* has not been allowed."  502 U.S. at 415 (emphasis added).  In *Folendore* and *McNeal*, just as in *Dewsnup*, the creditor's *claim* was concededly valid:  The debtor entered into a valid agreement with the mortgage-holder to borrow money, secured by a lien on the debtor's real property.  In *Folendore* and *McNeal*, just as in *Dewsnup*, the creditor's mortgage was underwater because the total amount the debtor borrowed exceeded the value of the debtor's property when the debtor filed for bankruptcy.  As *Dewsnup* made clear, however, that a mortgage is underwater matters only to the treatment of the

creditor's *claim* under Section 506(a)—the portion of the creditor's claim exceeding the value of the creditor's security interest is treated as unsecured. It has no effect on the treatment of the creditor's *lien* under Section 506(d). Rather, consistent with well-established pre-Code practice, "liens pass through bankruptcy unaffected" unless the underlying claim is disallowed, and "[a]ny increase over the judicially determined valuation" of the collateral "during bankruptcy rightly accrues to the benefit of the creditor." *Dewsnup*, 502 U.S. 417. As a logical matter, that is true regardless whether, in light of the present value of the property, the lien is partially or wholly underwater.

### B.    *Folendore* Conflicts With Decisions From The Fourth, Sixth, And Seventh Circuits

This Court stands alone in refusing to apply *Dewsnup* in strip-off cases. The Fourth, Sixth, and Seventh Circuits—all the other courts of appeals to consider the issue—have all concluded that *Dewsnup*'s interpretation of Section 506(d) bars a chapter 7 debtor from stripping off a wholly underwater lien securing a valid mortgage loan.

The Fourth Circuit so held in *Ryan v. Homecomings Financial Network*, 253 F.3d 778 (4th Cir. 2001). The debtor in *Ryan* contended that the creditor's wholly underwater lien could be stripped off under Section 506(d) because "*Dewsnup* controls only a 'strip down' of a partially secured lien, not a 'strip off' of a wholly unsecured lien." *Id.* at 781. The Fourth Circuit rejected that argument, explaining:

> Whether the lien is wholly unsecured or merely undersecured, the reasons articulated by the Supreme Court for its holding in *Dewsnup*—that liens pass through bankruptcy unaffected, that mortgagee and mortgagor bargained for a consensual lien which would stay with real property until foreclosure, and that any increase in the value of the real property should accrue to the benefit of the creditor, not the debtor or other unsecured creditors—are equally pertinent.

*Id.* at 783 (quoting *In re Laskin*, 222 B.R. 872 (B.A.P. 9th Cir. 1998) (brackets omitted)).  Concluding that "[t]he Court's reasoning in *Dewsnup* is equally relevant and convincing in a case like ours where a debtor attempts to strip off, rather than merely strip down, an approved but unsecured lien," the Fourth Circuit held that a debtor may not strip off a lien securing an allowed claim under Section 506(d) even if the lien is wholly underwater.  *Id.* at 782.

The Sixth Circuit subsequently reached the same conclusion, holding that *Dewsnup* "applies with equal force and logic" to strip-offs.  *In re Talbert*, 344 F.3d 555, 556 (6th Cir. 2003).  As in *Ryan*, the debtors in *Talbert* argued that "the secured status of a claim is determined by the security-reducing provision of § 506(a), and that pursuant to this provision, their junior lien is completely unsecured, and thus, according to § 506(d), may be 'stripped off.'"  *Id.* at 558 (footnotes omitted).  The Sixth Circuit noted that a "similar argument was rejected [by *Dewsnup*] in the analogous context of a debtor's attempt to 'strip down' an under-collateralized creditor's lien in a Chapter 7 case" and explained that

- 18 -

*Dewsnup*'s reasoning "applie[d] with equal validity to a debtor's attempt to effectuate a Chapter 7 strip off":

> As in the case of a "strip down," to permit a "strip off" would mark a departure from the pre-Code rule that real property liens emerge from bankruptcy unaffected.  Also, as in the case of a "strip down," a "strip off" would rob the mortgagee of the bargain it struck with the mortgagor, i.e., that the consensual lien would remain with the property until foreclosure. …  Finally, as was true in the context of "strip downs," Chapter 7 "strip offs" also carry the risk of a "windfall" to the debtors should the value of the encumbered property increase by the time of the foreclosure sale.

*Id.* at 560-561.

The Seventh Circuit recently reached the same conclusion in *Palomar v. First American Bank*, 722 F.3d 992 (7th Cir. 2013) (Posner, J.).  The Seventh Circuit first explained that Section 506(d) is "best interpreted as confirming the venerable principle … that bankruptcy law permits a lien to pass through bankruptcy unaffected, provided that it's a valid lien and secures a valid claim." *Id.* at 993.  It then concluded that *Dewsnup* defeated the debtor's attempt to strip off the creditor's wholly underwater lien:  "*Dewsnup* … holds that section 506(d) does not allow the bankruptcy court to squeeze down a fully valid lien to the current value of the property to which it's attached.  That's the relief the debtor in this case is seeking.  The only difference between this case and *Dewsnup* is that our debtors want to reduce the value of the lien to zero"—a difference, the Seventh

- 19 -

Circuit determined, that is immaterial in light of *Dewsnup*'s reasoning. *Id.* at 994 (citation omitted).[1]

The Fourth, Sixth, and Seventh Circuits are not alone. Every lower court outside this circuit to have addressed the issue has also held that *Dewsnup*'s reasoning forbids both strip-downs and strip-offs in chapter 7. *See, e.g.*, *Laskin*, 222 B.R. 872; *Wachovia Mortgage v. Smoot*, 478 B.R. 555 (E.D.N.Y. 2012); *In re Cook*, 449 B.R. 664 (D.N.J. 2011); *In re Richins*, 469 B.R. 375 (Bankr. D. Utah 2012); *In re Bowman*, 304 B.R. 166 (Bankr. M.D. Pa. 2003); *In re Fitzmaurice*, 248 B.R. 356 (Bankr. W.D. Mo. 2000). Like the Fourth, Sixth, and Seventh Circuits, these courts reject the superficial distinction between strip-offs and strip-

---

[1]    Notably, *Palomar* was briefed and argued after *McNeal* issued, and the debtor asked the Seventh Circuit to follow this Court's reasoning in *McNeal*. *See* Brief of Plaintiff-Appellants, *Palomar v. First Am. Bank*, 2012 WL 6660402, at *33 (7th Cir. Dec. 10, 2012) ("Clearly, the courts that have chosen to extend the holding of *Dewsnup* did so although it was not warranted. As the Eleventh Circuit stated, '[o]bedience to a Supreme Court decision is one thing, extrapolating from its implications a holding on an issue that was not before that Court . . . is another thing.'" (citing *McNeal*, 735 F.3d at 1265-1266)). The Seventh Circuit declined to adopt *McNeal*'s reasoning.

downs.  "Rather, what is controlling is the Supreme Court's construction of § 506(d)."  *Smoot*, 478 B.R. at 568.[2]

### C. *Folendore* Has Adversely Affected The Treatment Of Home Mortgages In Chapter 7 Bankruptcies Within This Circuit

*McNeal*'s reaffirmance of *Folendore* has had—and, unless *Folendore* is reversed, will continue to have—a substantial and adverse effect on the treatment of home mortgages in chapter 7 bankruptcies within this circuit.

The *McNeal* decision placed this circuit's bankruptcy judges in a quandary because they have "struggled to reconcile *McNeal* and *Dewsnup*."  *In re Malone*, 489 B.R. 275, 277, 284 (Bankr. N.D. Ga. 2013).  Although many bankruptcy courts have opined that *Dewsnup* should control in strip-off cases, they have reluctantly followed *McNeal*'s holding that *Folendore* remains binding.  As one judge explained, "[w]hile this Court believed the reasoning in *Dewsnup* was controlling under the circumstances presented in this case, it has come to understand, through *McNeal*, that the Eleventh Circuit Court of Appeals does not believe it is."  *In re Bertan*, 2013 WL 216231, at *2 (Bankr. S.D. Fla. Jan. 18, 2013); *see also Malone*, 489 B.R. at 280-281 ("In the absence of the *McNeal*

---

[2]    Although a handful of lower courts outside the Eleventh Circuit initially ruled that *Dewsnup* did not apply to strip-offs, those decisions have been overruled or reversed.  *See, e.g.*, *In re Farha*, 246 B.R. 547 (Bankr. E.D. Mich. 2000), *overruled by Talbert*, 344 F.3d 555; *In re Zempel*, 244 B.R. 625 (Bankr. W.D. Ky. 1999), *overruled by Talbert*, 344 F.3d 555; *In re Yi*, 219 B.R. 394 (E.D. Va. 1998), *overruled by Ryan*, 253 F.3d 778; *In re Smoot*, 465 B.R. 730 (Bankr. E.D.N.Y. 2011), *rev'd sub nom. Wachovia Mortgage v. Smoot*, 478 B.R. 555 (E.D.N.Y. 2012).

decision, this court would apply *Dewsnup*'s § 506(d) analysis to these facts. …
However, *McNeal* instructs that *Folendore* is controlling law in this circuit."); *In re
Williams*, 488 B.R. 492, 496-497 (Bankr. M.D. Ga. 2013) (deciding to "follow
*McNeal*, even though the Court is persuaded *McNeal* was wrongly decided"); *In re
Campbell*, 498 B.R. 370, 372 (Bankr. N.D. Ga. 2013) (applying *Folendore* even
though it "does not arguably seem to survive under the rationale and holding of
*Dewsnup*").  Although, now that this Court has ordered that *McNeal* be published,
there is no doubt that both *McNeal* and *Folendore* are binding on lower courts
within this circuit, the lower courts' difficulty in reconciling *McNeal* and *Dewsnup*
strongly suggests that the *en banc* Court should reconsider the issue.

Moreover, *McNeal* significantly altered the landscape in chapter 7 cases in
this circuit.  As two local practitioners put it, "[t]he significance of *McNeal* can
hardly be [over]stated, especially in this depressed real estate market" because
"numerous properties subject to multiple mortgage liens are worth less than the
amount of the first-priority mortgage."  Bruce & Popowitz, *Get Busy Stripping Until
The Eleventh Circuit Says Otherwise*, 2 S.D. Fla. Bankr. Bar Ass'n Journal 9 (2013).

Indeed, since *McNeal*, chapter 7 debtors have filed a flood of motions and
complaints to strip off wholly underwater junior liens.  In the Northern District of
Georgia alone, debtors had filed more than 500 such motions by March 31, 2013.
*See In re Malone*, No. 12-61289-MGD, Dkt. 54, at 4 (Bankr. N.D. Ga. Apr. 25,

2013).  And the flood has not abated one bit—more than 50 such motions were

docketed in the Middle District of Florida just in April 2014.[3]  Bank of America

itself is currently litigating 60 other strip-off proceedings within the Eleventh

Circuit, including several that are currently pending in this Court.[4]  What's more,

---

[3]    Counsel for Bank of America reviewed all motions listed on PACER filed in April 2014 in the U.S. Bankruptcy Court for the Middle District of Florida and found 55 strip-off motions in chapter 7 cases.

[4]    *Bank of Am., N.A. v. Bello*, No. 14-10062 (11th Cir.); *Bank of Am., N.A. v. Madden*, No. 13-14438 (11th Cir.); *Bank of Am., N.A. v. Boykins*, No. 13-14908 (11th Cir.); *Bank of Am., N.A. v. Brown*, No. 13-14298 (11th Cir.); *Bank of Am., N.A. v. Buenaseda*, No. 13-15037 (11th Cir.); *Bank of Am., N.A. v. Braswell*, No. 13-15777 (11th Cir.); *Bank of Am., N.A. v. Peele*, No. 13-15839 (11th Cir.); *Bank of Am., N.A. v. Hamilton-Presha*, No. 14-10137 (11th Cir.); *Bank of Am., N.A. v. Lopez*, No. 14-10518 (11th Cir.); *Bank of Am., N.A. v. Beloteserkovsky*, No. 14-11012 (11th Cir.); *Bank of Am., N.A. v. Nemcik*, No. 14-11290 (11th Cir.); *Bank of Am., N.A. v. Lee*, No. 14-11353 (11th  Cir.); *Bank of New York Mellon v. Lang*, No. 14-11373 (11th Cir.); *Bank of Am., N.A. v. Johnson*, No. 14-11387 (11th Cir.); *Bank of Am., N.A. v. Waits*, No. 14-11408 (11th Cir.); *Bank of Am., N.A. v. Garro*, No. 14-11676 (11th Cir.); *Bank of Am., N.A. v. Vander Iest, Jr.*, No. 14-12406 (11th Cir.); *Bank of Am., N.A. v. Farmer*, No. 14-12444 (11th Cir.); *Bank of Am., N.A. v. Vander Iest*, No. 14-12486 (11th Cir.); *Bank of Am., N.A. v. Beursken*, No. 14-12546 (11th Cir.); *Bank of Am., N.A. v. Phillips*, No. 14-12585 (11th Cir.); *Bank of Am., N.A. v. Hall*, No. 14-11292 (11th Cir.); *Bank of America, N.A. v. Lakhani*, No. 14-12749 (11th Cir.); *Bank of Am., N.A. v. Evans*, No. 14-12887 (11th Cir.); *Bank of Am., N.A. v. Glaspie*, No. 14-743 (N.D. Ga.); *Bank of Am., N.A. v. Miller*, No. 14-1377 (N.D. Ga.); *In re Lomax*, No. 13-62584 (Bankr. N.D. Ga.); *In re McDonald*, No. 13-11522 (Bankr. N.D. Ga.); *In re Reid*, No. 13-68943 (Bankr. N.D. Ga.); *In re Auriemmo*, No. 13-69444 (Bankr. N.D. Ga.); *In re Copeland*, No. 13-74750 (Bankr. N.D. Ga.); *In re Smart*, No. 13-13053 (Bankr. N.D. Ga.); *In re Williams*, No. 13-61816 (Bankr. N.D. Ga.); *In re Pampalon*, No. 13-74418 (Bankr. N.D. Ga.); *In re Rubio*, No. 13-43150 (Bankr. N.D. Ga.); *In re Bogdan*, No. 13-75050 (Bankr. N.D. Ga.); *In re Rayoni*, No. 13-77556 (Bankr. N.D. Ga.); *In re Maclin*, No. 13-76375 (Bankr. N.D. Ga.); *In re Langford*, No. 13-74530 (Bankr. N.D. Ga.); *In re Cumpson*, No. 12-53106 (Bankr. N.D. Ga.); *In re*

in many of these proceedings, the debtor is attempting to reopen a chapter 7 case
that was closed months or even years ago in order to strip off a junior lien on the
debtor's property. *See, e.g.*, *In re Davis*, No. 12-21148 (Bankr. N.D. Ga.)
(bankruptcy case was closed in July 2012, but debtor filed strip-off motion in
October 2013).

Eventually, the practice of voiding wholly underwater junior liens may
further depress the housing market because it distorts the amount that creditors can
expect to recover on home loans. Secured loans, including home mortgages,
provide borrowers with lower interest rates precisely because the creditor can look
to its lien for repayment if the debtor defaults. *See* Mann, *Explaining the Pattern
of Secured Credit*, 110 Harv. L. Rev. 625, 683 (1997). And a lien has value to a
creditor even if it is currently underwater because the property securing the lien

---

*Marshall*, No. 12-56791 (Bankr. N.D. Ga.); *In re Yarbrough*, No. 13-12547
(Bankr. N.D. Ga.); *In re Jackson*, No. 14-40990 (Bankr. N.D. Ga.); *In re Gnerre*,
No. 13-8158 (Bankr. M.D. Fla.); *Allen v. Bank of Am., N.A.*, No. 13-216 (Bankr.
M.D. Fla.); *In re Brantley*, No. 13-500 (Bankr. M.D. Fla.); *In re Corrad*, No. 13-
14410 (Bankr. M.D. Fla.); *In re Corrad*, No. 14-5054 (Bankr. M.D. Fla.); *Million
v. Bank of Am., N.A.*, No. 13-345 (Bankr. M.D. Fla.); *In re Tower*, No. 13-10941
(Bankr. M.D. Fla.); *In re Hawkins*, No. 13-14555 (Bankr. M.D. Fla.); *In re Colon*,
No. 13-13430 (Bankr. M.D. Fla.); *In re Hackbart*, No. 13-16027 (Bankr. M.D.
Fla.); *In re Scharboneau*, No. 13-6751 (Bankr. M.D. Fla.); *Violenusellis v. Bank of
Am., N.A.*, No. 14-151(Bankr. M.D. Fla.); *In re Fenton*, No. 14-868 (Bankr. M.D.
Fla.); *In re Herrick*, No. 14-1087 (Bankr. M.D. Fla.); *In re Mayo*, No. 14-30209
(Bankr. M.D. Fla.); *In re Rodriguez*, No. 14-3540 (Bankr. M.D. Fla.); *In re
Corriveau*, No. 13-40717 (Bankr. N.D. Fla.); *In re Amador*, No. 13-15740 (Bankr.
S.D. Fla.).

may appreciate in the future, causing the lien to regain value as well. *Dewsnup* explained that this appreciation in value "rightly accrues to the benefit of the creditor." 502 U.S. at 417. But the rule espoused by *McNeal* and *Folendore* fundamentally changes the equation, depriving junior lenders of their bargained-for rights and potentially leading to costlier mortgages. As Judge Posner has noted, "bankruptcy provisions 'friendly to debtors' are so only in the short run; in the long run, the fewer rights that creditors have in the event of default, the higher interest rates will be to compensate creditors for the increased risk of loss." *In re River E. Plaza, LLC*, 669 F.3d 826, 833 (7th Cir. 2012).

\*   \*   \*

In sum, *Folendore* is wrong as a matter of law and problematic as a matter of bankruptcy policy. It should be overruled.

## CONCLUSION

In light of *McNeal* and *Folendore*, this panel is bound to affirm the lower courts' judgment stripping Bank of America's wholly underwater junior lien. But Bank of America reserves its right to ask the *en banc* Court to rehear the matter and overrule *McNeal* and *Folendore*.

Respectfully submitted,

/s/  Craig Goldblatt

CRAIG GOLDBLATT
DANIELLE SPINELLI
ISLEY MARKMAN GOSTIN
WILMER CUTLER PICKERING
   HALE & DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C.  20006
(202) 663-6000

LAUDY LUNA PEREZ
LIEBLER, GONZALEZ &
PORTUONDO, P.A.
44 WEST FLAGLER ST., SUITE 2500
MIAMI, FL 33130
(305) 379-0400

*Counsel for Bank of America, N.A.*

Dated:  July 8, 2014

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

1.     Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(a)(7)(B), the brief contains 6,385 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/  Craig Goldblatt
CRAIG GOLDBLATT

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of July, 2014, I electronically filed the foregoing **BRIEF FOR APPELLANT BANK OF AMERICA, N.A.** with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the appellate CM/ECF system.  I certify that I served the Counsel for Felix Sardina and Yaneisy Sardina with the foregoing document by overnight courier at the following address:

Timothy S. Kingcade
Kingcade & Garcia, PA
1370 CORAL WAY
MIAMI, FL 33145-2960

/s/  Craig Goldblatt
CRAIG GOLDBLATT